1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9  JAMES WINSTON and MARTHA)        No. CIV 04-0342-PHX-SMM
   WINSTON, Husband and Wife,      )
10                                  )        **ORDER**
              Plaintiffs,           )
11                                  )
      vs.                           )
12                                  )
   AMERICAN FAMILY MUTUAL)
13 INSURANCE COMPANY, et al.,       )
                                    )
14           Defendants,            )
   _____)

15

16

17         Pending before the Court is Defendant American Family's Motion for Summary

18 Judgment [Doc. No. 59] and a Motion for Partial Summary Judgment [Doc. No. 61] filed by

19 James and Martha Winston, Plaintiffs.  Defendant American Family has also filed an Objection

20 to Plaintiffs' Separate Statement of Facts [Doc. No. 83].  After considering the arguments raised

21 in the parties' briefs and asserted at oral argument, the Court issues the following Memorandum

   of Decision and Order.

22
                                  **BACKGROUND**
23
          On January 13, 2004, Plaintiffs filed a Complaint in Maricopa County Superior Court
24
   alleging two counts: 1) Count I: Breach of Contract and 2) Count II:  Breach of Implied
25
   Covenant of Good Faith and Fair Dealing/Bad Faith.  Plaintiffs have also sought punitive
26
   damages.  On February 17, 2004, this case was removed from State court under 28 U.S.C. §
27
   1332(a) [Doc. No. 1].  On August 11, 2005, Defendant filed a Motion for Summary Judgment
28

1    addressing Plaintiffs' bad faith claim and claim for punitive damages.  On August 12, 2005,

2    Plaintiffs filed a Motion for Partial Summary Judgment on Count I regarding the first $15,000

3    in damages [Doc. No. 61].

4                                   **STANDARD OF REVIEW**

5            A court must grant summary judgment if the pleadings and supporting documents,

6    viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue

7    as to any material fact and that the moving party is entitled to judgment as a matter of law."

8    FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.

9    Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Additionally, upon motion

10   at any time, a party defending against a claim may move for "partial summary judgment," that

11   is, "summary judgment in the party's favor as to . . . any part thereof." FED. R. CIV. P. 56(b).

12   A court must grant summary judgment if the pleadings and supporting documents, viewed in

13   the light most favorable to the nonmoving party, "show that there is no genuine issue as to any

14   material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV.

15   P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed.

16   Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines which facts are

17   material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d

18   at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing

19   law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  The

20   dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could

21   return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

22           A principal purpose of summary judgment is "to isolate and dispose of factually

23   unsupported claims." Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate against

24   a party who "fails to make a showing sufficient to establish the existence of an element essential

25   to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322;

26   see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).  The moving party

27   need not disprove matters on which the opponent has the burden of proof at trial. See Celotex,

28

1  477 U.S. at 323-24.  The party opposing summary judgment "may not rest upon the mere

2  allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that

3  there is a genuine issue for trial."  FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co. v.

4  Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,

5  1049 (9th Cir. 1995).

6  ## DISCUSSION

7  Unless otherwise indicated, the following facts are undisputed.  On February 3, 2002,

8  Jason Schroeder ("Schroeder"), an insured under Defendant's automobile insurance policy

9  with limits of $15,000 per person and $30,000 per occurrence, hit Plaintiff James Winston

10  ("Winston") in a crosswalk.  Winston was in his wheelchair at the time of the accident.  On

11  February 6, 2002, Schroeder reported the claim to Defendant's call center.  During the call,

12  Schroeder admitted he had received a ticket for failure to yield and indicated Winston had

13  signed a release at the scene and did not go to the hospital.

14  On February 12, 2002, Elizabeth Cole (Defendant's adjuster assigned to Schroeder's

15  case) ("Cole") contacted James Marner (Winston's Attorney at that time) ("Marner") and

16  was informed that Winston had suffered a concussion and was taken to an emergency room.

17  Marner also informed Cole that Winston was confined to a wheelchair because he suffered

18  from multiple sclerosis.  During the call, Cole informed Marner that Schroeder had $15,000

19  per person and $30,000 per occurrence policy limits.  On March 22, 2001, Cole informed

20  Marner Defendant would pay Winston's property damage claim thereby eliminating that

21  issue.

22  There was no further activity in the case from the end of March until the end of May

23  when Cole called Marner and left a message requesting an update regarding the medical

24  claim.  Marner did not return Cole's phone call.  Cole then went on vacation from July 4

25  through July 15, 2002.

26  Sometime after July 15, 2002, Cole reviewed a demand letter dated June 18, 2002

27  which included Winston's medical records that demanded payment of the policy limits by

28  July 8, 2002.  On August 1, 2002, Cole contacted Marner regarding the settlement demand

1    and informed him that after a review of the medical records she concluded that she needed

2    to refer the file to Defendant's medical services unit.  Cole also informed Marner that she

3    needed copies of the medical bills before the referral could be made.  On September 5, 2002,

4    Marner sent Cole medical bills in excess of $20,000, reiterated Schroeder's demand for the

5    policy limit, and imposed a new deadline of September 12, 2002.

6          On September 11, 2002, Cole mailed a letter to Schroeder informing him, for the first

7    time, of the policy limit demand made by Plaintiffs and informed him that the ultimate value

8    of the claim may exceed those limits.  Cole also sent Marner a letter on September 11, 2002

9    informing him that she was referring the file to Defendant's medical services unit for review

10   but did not request an extension of the September 12, 2002 deadline which subsequently

11   passed without payment being tendered.  On September 23, 2002, Marner sent Cole a letter

12   withdrawing the offer to settle for the policy limits.[1]

13         On September 27, 2002, Cheryl Oliver, a registered nurse employed in Defendant's

14   medical services unit, produced a written report that stated it was possible Winston's

15   rehabilitation treatment was "necessary as a result of some level of worsening of his pre-

16   existing MS symptoms due this MVA."  Cole reviewed this report on October 10, 2002.

17          On October 11, 2002, Cole called Marner's office and left a message and informed

18   the receptionist that the purpose of the call was for Defendant to make an offer to pay the

19   policy limit of $15,000.  Cole again called Marner to make the same offer on October 21,

20   2002 and then sent a letter on October 28, 2002 reiterating Defendant's desire to settle

21   Plaintiffs' claim for the policy limits.

22         On November 12, 2002, Marner sent Cole a letter reminding Cole that the offer to

23   settle for the policy limit of $15,000 was withdrawn on September 23, 2002, and that

24   Plaintiffs would be filing a complaint against Schroeder.  On November 13, 2002, Winston

25   filed a Complaint against Schroeder in Maricopa County Superior Court alleging

26   negligence.  On May 8, 2003, Schroeder stipulated to the entry of a $275,000 judgment

27

28          [1]  Defendant contends this letter was not reviewed until October 10, 2002.

- 4 -

1   against him in exchange for an agreement that Winston would not execute the judgment

2   against Schroeder's personal assets (a *Morris* Agreement).  As part of the agreement,

3   Schroeder assigned his bad faith claim against Defendant to Winston.

4          On August 21, 2003, the Maricopa County Superior Court entered judgment against

5   Schroeder for $275,000 pursuant to the parties' stipulation.

6   *I.  Defendant's Motion for Summary Judgment*

7          *A.  Bad Faith Claim*

8          A federal court sitting in diversity must look to the forum state's choice of law rules

9   to determine the controlling substantive law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313

10  U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  Under Arizona law, "the insurer owes

11  the insured an implied contractual duty to 'treat settlement offers with equal consideration' to

12  its interests and those of the insured."  Safeway Ins. Co., Inc. v. Guerrero, 106 P.2d 1020,

13  1024 (Ariz. 2005) (quoting Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme, 735 P.2d 451, 459

14  (Ariz. 1987).   This duty arises from the implied covenant of good faith and fair dealing.  Id.

15  (citing Hartford Acc. & Indem. Co. v. Aetna Cas. & Surety Co., 792 P.2d 749, 752 (Ariz.

16  1990) ("It is settled law in Arizona, based on a covenant of good faith and fair dealing, that

17  an insurance company owes its insured a duty of good faith in deciding whether to accept or

18  reject settlement offers.")).

19          Plaintiffs contend that the obligation of good faith and fair dealing requires the carrier

20  to keep its insured informed.  "[F]ailure of the insurer to inform the insured of a compromise

21  offer" is among the factors to be considered by the trier of fact in a third-party bad faith

22  claim set forth by the Arizona Supreme Court.  Clearwater v. State Farm Mutual Auto. Ins.

23  Co., 792 P.2d 719, 722 (Ariz. 1990) (citing Farmers Ins. Exch. v. Henderson, 313 P.2d 404,

24  406 (Ariz. 1957); see also Anguiano v. Allstate, 209 F.3d 1167 (9th Cir. 2000) (recognizing

25

26

27

28

1   that an insurer has an obligation to forward settlement offers to the insured and that failure

2   to do so can constitute bad faith under California law[2]).

3        It is undisputed that Defendant first attempted to inform Schroeder of Plaintiffs' offer

4   to settle for the policy limit of $15,000 by mailing a letter on September 11, 2002 (a date

5   well past the July 8, 2002 deadline and the day before the September 12, 2002 deadline

6   expired).   Furthermore, it is undisputed that Defendant was concerned with determining

7   whether Winston's injuries were caused by the accident yet it did not seek additional

8   information regarding the accident and Winston's condition immediately after the accident

9   from Schroeder. Plaintiffs have also put forth evidence that suggests the failure to keep the

10  insured informed violated Defendant's own Company Claim Bulletin #16 and that

11  Defendant has not undertaken any formal effort to ensure compliance with this internal

12  directive.

13       Plaintiffs also allege that Defendant deliberately failed to perform a diligent and

14  adequate investigation of Plaintiffs' claim.   After listing several specific factors to be

15  considered by the trier of fact in third-party bad faith cases, the Arizona Supreme Court has

16  also stated that the Court must consider any other factors "tending to establish or negate bad

17  faith on the part of the insurer." Clearwater, 792 P.2d at 722.

18       The Court finds that Defendant did not respond to a letter dated June 18, 2002 until

19  August 1, 2002 despite the fact that the letter contained a July 8, 2002 deadline and that

20  Defendant allowed a second deadline to lapse without requesting an extension.  The Court

21  also finds that Cole waited until October 10, 2002 to review the report from Defendant's

22  medical services unit dated September 27, 2002 despite informing Marner that once she had

23  the medical services report "they could begin the process of concluding the claim" and

24  knowing that Defendant had already missed two deadlines set by Marner.

25

26  _____

27       [2]  Under California law, the implied covenant of good faith is remarkably similar to Arizona law and
     requires an insured to "take into account the interest of the insured and give it at least as much consideration as
28   it does to its own interest." Anguiano, 209 F.3d at 1169.

1    The Court finds that the issue of whether Plaintiffs have created a question of fact

2    regarding Plaintiff's bad faith claim is a close one.  Specifically, the Court finds that the tone

3    of Marner's letters unduly accusatory and lacking in professional tenor.  This

4    notwithstanding, the finds that Defendant's failure to inform Schroeder of Winston's

5    settlement offer prior to the expiration of two deadlines and in contravention of Defendant's

6    own written policy, creates an issue of material fact to whether Defendant's acted in bad

7    faith.  The Court also finds that Plaintiffs have set forth evidence that creates an issue of

8    material fact to whether  Defendant's failure to perform an adequate and diligent

9    investigation of Schroeder's claim constitutes bad faith.  Thus, Defendant's Motion for

10   Summary Judgement is denied as to Plaintiffs' bad faith claim.

11       *B.  Punitive Damages*

12       At oral argument, Plaintiffs' counsel stated that the egregiousness of Defendant's

13   conduct required the imposition of punitive damages.  The opinion of counsel

14   notwithstanding, under Arizona law "[t]o obtain punitive damages, a plaintiff must prove

15   that 'defendant's evil hand was guided by an evil mind.'" Volz v. Coleman Co., Inc., 748

16   P.2d 1191, 1194 (Ariz. 1987) (citing Rawlings v. Apodaca, 726 P.2d 565, 578 (Ariz. 1986)).

17    Plaintiffs must do so by clear and convincing evidence.  Thompson v. Better-Bilt

18   Aluminum Products, Co., Inc., 832 P.2d 203, 209 (Ariz. 1992).[3]  The requisite evil mind

19   may be established in two ways: 1) "defendant intended to injure the plaintiff" or 2)

20   "defendant consciously pursued a course of conduct knowing that it created a substantial

21   risk of harm to others."   Volz, 748 P.2d 1191 at 1194.

22       While addressing the propriety of punitive damages in bad faith cases, the Arizona

23   Supreme Court has stated: "punitive damages are recoverable in a bad faith action when the

24   defendant's conduct is 'aggravated, outrageous, malicious or fraudulent' combined with an

25

26       [3]  The Arizona Supreme Court has also recognized that motions for summary judgment regarding claims

27   for punitive damages are more complicated given Plaintiffs' more onerous burden of proof and held that "a
     motion...for summary judgment must be denied if a reasonable jury could find the requisite evil mind by clear

28   and convincing evidence." Thompson, 832 P.2d at 210-11.

1  evil mind as evidenced by a showing that the defendant was consciously aware of the needs

2  and rights of the insured and nevertheless, ignored its obligations."   Linthicum v.

3  Nationwide Life Ins. Co., 723 P.2d 675, 681 (Ariz. 1986) *quoting* Rawlings 726 P.2d at 578

4  (Ariz. 1986).   The Court must now apply these principles to the instant case.

5      The Arizona Supreme Court has found that even where an insurance company does

6  not deal with an insured in good faith, there still must be evidence of an evil mind

7  "illustrating a desire to harm or consciously disregard" an insured's rights.  Linthicum 723

8  P.2d at 681 (finding that denying all claims upon any supportable basis is not in the insured's

9  interest and is evidence relevant to a bad faith claim, but also finding this evidence was

10  insufficient to establish punitive damages were appropriate).  In Nationwide, the Court also

11  specifically noted that while the insured was not satisfied with the procedures utilized by

12  insurance company, the procedures were not designed to deny valid claims.  Id. at 682.

13      A year later, the Arizona Supreme Court also found that even where the jury's finding

14  of bad faith was supported by the evidence and the insurance company's "reasons for its

15  dilatory settlement of Filasky's three claims were either groundless or inadequately

16  investigated," the insured failed to meet its burden to establish punitive damages were

17  appropriate.  Filasky v. Preferred Risk Mutual Ins. Co., 734 P.2d 76, 84 (Ariz. 1987).

18      Despite finding that Plaintiffs have presented sufficient evidence to create an issue of

19  fact as Plaintiffs' bad faith claims, the Court finds that Plaintiffs (like the plaintiff in

20  Nationwide)  have failed to present evidence that Defendant's conduct was specifically

21  designed or intended to deny Plaintiffs' claim.  Furthermore, under Filasky, the Court finds

22  even if a jury finds that Defendant did not adequately investigate the claim or that its

23  grounds for the delay were baseless, these findings are not sufficient to establish punitive

24  damages are appropriate.

25      The Court also finds that Defendant has put forth evidence that Marner's letters were

26  combative and imposed a deadline that expired before Marner had sent Defendant Winston's

27  medical bills and that Marner failed to contact Defendant from the end of March until June.

28  While the Court recognizes that a jury will have to weigh this evidence against the evidence

1    put forth by Plaintiffs to evaluate Plaintiffs' bad faith claims, the Court finds that such

2    evidence further establishes that a reasonable jury could not find Defendant possessed the

3    requisite evil mind by clear and convincing evidence.

4          In Plaintiffs' separate statement of facts, Plaintiffs contend that Defendant has been

5    involved in other bad faith cases (resulting in two settlement agreements and a jury verdict

6    in the Kamiab case against Defendant) and has failed to modify its claim handling

7    procedures thereby allowing a reasonable jury to impose punitive damages.  Defendant,

8    however, has objected to these statements because they are unsupported by admissible

9    evidence.

10         The Ninth Circuit has clearly stated that a party cannot manufacture a genuine issue

11   of material fact merely by making assertions.  S.A. Empresa de Viacao Aerea Rio

12   Grandense v. Walter Kidd & Co., 690 F.2d 1235, 1238 (9th Cir. 1982).

13         The Court finds that the record does not contain an affidavit attesting to the judgment

14   nor does it contain a copy of the judgment.  Rather, the only evidence in the record

15   regarding Kamiab case are references to the name of the case by Plaintiffs' counsel during

16   depositions.  Additionally, the Court notes that Plaintiffs own statement of facts sets forth

17   two different dates for Kamiab case, thereby only further highlighting the need for counsel's

18   allegations to be supported by admissible facts in the record.  Thus, the Court finds that

19   Plaintiffs attempt to rely on counsel's assertions to create an issue of material fact fail as a

20   matter of law.[4]

21         After examining the evidence contained in the record, the Court finds that even

22   assuming that Defendants' conduct in this case constitutes bad faith, Plaintiffs have failed to

23   present evidence that Defendant intended to injure Plaintiffs or consciously disregarded a

24   substantial risk of significant harm to Plaintiffs.  Accordingly, the Court finds that a

25   reasonable jury could not find Defendant possessed the requisite evil mind by clear and

26   _____

27         [4] The Court notes that because Plaintiffs' assertions that defendant was involved in prior bad faith
     lawsuits are not supported by admissible facts, the Court makes no finding as to the propriety of Plaintiffs'
28   attempt to rely on evidence of prior lawsuits or settlements or whether this evidence would be admissible.

1  convincing evidence. Thus, Defendant's Motion for Summary Judgment as to Plaintiffs'

2  claim for punitive damages is granted.

3  **II. Plaintiffs' Motion for Partial Summary Judgment**

4      Plaintiffs contend that Defendant breached its insurance contract with Schroeder (its

5  insured) by failing to indemnify Schroeder for the policy limit of $15,000 once the judgment

6  was entered against him for $275,000.  Plaintiffs further contends they are entitled to

7  summary judgment on their breach of contract theory.  Defendant, however, argues that

8  Schroeder's alleged breach of the cooperation clause and Winston's wrongful inducement of

9  the alleged breach create issues of fact as to Plaintiffs breach of contract claim.

10      In support of their contentions, Plaintiffs rely on Arizona's Financial Responsibility

11  Act (A.R.S. § 28-4009) which states in pertinent part:

12          (a) The liability of the insurance carrier with respect to
          the insurance required by this chapter becomes absolute when
13          injury or damage covered by the motor vehicle policy occurs.
          The policy may not be cancelled or annulled as to that liability
14          by an agreement between the insurance carrier and the insured
          after the occurrence of the injury or damage, and a statement
15          made by the insured or someone on the insured's behalf or **a
          violation of the policy shall not defeat or void the policy**.
16          (emphasis added)

17      A.R.S. § 28-4009(C)(5)(a)

18      The Arizona Court of Appeals has held that an insurance company's liability becomes

19  absolute upon the occurrence of the accident even where the insured fraudulently entered

20  into the insurance contract. Midland Risk Mgmt. Co. v. Watford, 876 P.2d 1203, 1207

21  (Ariz. Ct. App. 1994) (interpreting A.R.S. § 28-1170 (the prior version of A.R.S. § 28-

22  4009(C)(5)(a)).   In Midland, the court also found that the provisions of A.R.S. § 28-1170

23  that provided "that the liability of an insurance carrier becomes absolute when injury or

24  damage occurs" and "no statement made by the insured or on his behalf and no violation of

25  the policy shall defeat or void the policy" were clear and unequivocal.  Id.

26      The Ninth Circuit has also interpreted A.R.S. § 28-1170 and found that "to the extent

27  of the limits required by the Arizona Financial Responsibility law, 'noncooperation' is no

28

1 longer a valid defense in Arizona...." State Farm Mut. Auto. Ins. Co. v. Thompson, 372 F.2d

2 256, 260 (9th Cir. 1967).

3      Initially, the Court finds that the current statute is almost identical to the prior version

4 interpreted both by the Ninth Circuit and Arizona Court of Appeals.  Accordingly, the Court

5 also finds, based on the plain language of the statute and existing precedent, that even if

6 Schroeder violated the non-cooperation clause of the policy, Defendant cannot escape

7 liability under § 28-4009(C)(5)(a).

8      Plaintiffs contend that summary judgment is also appropriate as to damages in the

9 policy limit of $15,000.  In support of this contention, Winston argues that Defendant is

10 collaterally estopped from re-litigating liability and damages.

11      The Arizona Court of Appeals has recently addressed the interplay between *Morris*

12 Agreements and collateral estoppel principles and held: "issues subsumed in a *Morris*

13 Agreement and relating strictly to liability and damages rather than coverage must be given

14 the same binding collateral effect as if the judgment underlying the action had been entered

15 after a fully litigated trial subject only to a judicial determination that settlement is

16 reasonable and non-collusive."  Associated Aviation Underwriters v. Wood, 98 P.3d 572,

17 587 (Ariz. Ct. App. 2004); See also Himes v. Safeway Ins. Co., 66 P.3d 74, 84 (Ariz. Ct.

18 App. 2003) (finding that an insurer is entitled to contest the reasonableness of damages in

19 spite of allegations that insurer failed to treat settlement offers with equal consideration).

20      Accordingly, even applying the principles of collateral estoppel, the amount of

21 damages Plaintiffs may recover is far from settled because the Court may be required to

22 conduct a reasonableness hearing regarding the settlement terms and Defendant will not be

23 bound by the stipulated judgment if the jury finds that Defendant did not act in bad faith.[5]

24

25

26

27      [5] Safeway Ins. Co., 106 P.2d at 1024 (stating "if bad faith is not established, the *Morris* Agreement will be a breach of the cooperation clause and the insurer will be excused from any duty to pay the stipulated judgment, no matter how reasonable the amount" but failing to address the interplay between a breach of the cooperation clause and A.R.S. § 28-4009).

28

1  Thus, the Court's finds that even if Schroeder violated a non-cooperation clause in the

2  policy, Defendant cannot escape liability under § 28-4009(C)(5)(a) and therefore grants

3  Plaintiffs' motion for partial summary judgment on the narrow issue of liability up to the

4  policy limits under A.R.S. § 28-4009(C)(5)(a).

5

6  ### CONCLUSION

7

8  **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment as to
   Plaintiff's Bad Faith Claim is hereby **DENIED**.

9

10  **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to
   Plaintiff's claim for punitive damages hereby **GRANTED**.

11

12  **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment
   on its breach of contract claim is hereby **GRANTED** only as to the narrow issue of whether

13  Defendant can escape liability under § 28-4009(C)(5)(a) even if Plaintiffs violated a non-

14  cooperation clause contained in the policy.

15

16

17  DATED this 8th day of February, 2006.

18

19  Stephen M. McNamee
   Chief United States District Judge

20

21

22

23

24

25

26

27

28